United States District Court
Central District of Illinois

United States
Plaintiff

vs

Timothy Fredrickson
Defendant

Dist No.  17-CR-40032

Habeas No.  22-CV-04154

COA No.  25-AP-

## Notice of Appeal and petition for Circuit Issuance of Certificate of Appealability

To all parties **TAKE NOTICE** that **Fredrickson** hereby expresses INTENT TO **APPEAL** the final order of the **petition for collateral relief and related orders** entered by the **Hon. Sr. Judge Michael Mihm**. This appeal pending certification of appealability is taken to the **Seventh Circuit Court of Appeals**.

Pursuant to 28 U.S.C. § 2253(c), Fredrickson respectfully requests a **Certificate of Appealability** (COA) from the **Seventh Circuit Court of Appeals**. The appellant seeks to appeal the denial of his habeas corpus petition under 28 U.S.C. §2255 based on substantial constitutional and procedural issues, which are debatable among jurists of reason and warrant further review, including whether counsel should have been appointed, whether it was appropriate for the trial judge to preside over the petition, as well as the merit of the petition itself. A copy of Fredrickson's COA's presented to the district court appears at Appendix B.

### Jurisdictional Statement

The District court had jurisdiction pursuant to Title 28 USC §2255, and entered final judgment on 11/18/2024, posting the same electronically on 11/19/2024.  See R. #301. Mailed notice was received on or about 11/26/2024.

This NOA and request for COA is timely filed within 60 days as required by FRAP  4(a)(1)(B).

The Circuit court has jurisdiction pursuant to 28 §2253(c), 28 §1292, and FRAP  22.

A request for the COA to be initially heard *en banc* is made pursuant to FRAP  35(c)

- 1 -

## COA's

**Whether actual innocence was shown for the *ex post facto* violation, since exhibition of the *anus* was not criminalized until one year *after* Fredrickson's indictment, yet given to the jury for guilt determination.**

Reasonable people could debate whether the *possibility* of innocence is present when a defendant is indicted under one version of the law and convicted under another. The 2008 version of the law was in effect in 2017 when a Grand Jury indicted Fredrickson. The statute was amended by Congress in 2018, and the trial was held in 2020 with a jury instruction that included the new language from the new 2018 amendment. The *possibility* of actual innocence (as a threshold inquiry) is present as a matter of *law*[1], and to resolve whether Fredrickson is innocent as a matter of *fact*[2] requires an evidentiary hearing where the original jurors are asked if they convicted on the basis of something other than "anus".  --or a new trial to make that determination anew without the taint of "anus".

A reasonable person could also debate whether counsel demonstrated ineffectiveness by neglecting to check if the statute had been amended at any point in the two years leading up until trial. This claim should be allowed to proceed to full briefing because cause was shown by either actual innocence or counsel's ineffectiveness.

**Whether counsel's retirement and passing away properly precludes an evidentiary hearing.**

Counsel is not available due to death and retirement, and as a result an evidentiary hearing could not have produced any evidence of a strategic choice in regards to any claims that should have been raised in the district court or on direct appeal. Put differently, it would not have been possible for an evidentiary hearing to resolve any facts in favor of the *government* regarding the cause of defense counsel's omissions. Reasonable people could debate whether *Fredrickson* can further substantiate his claims with emails and written correspondence, or phone recordings from the Mercer County jail   --as a result it was error to withhold an evidentiary hearing. A certificate is requested on two related points: Whether the government's inability to obtain contrary proof from decedent counsel means that Fredrickson's version must prevail[3], and if not, whether Fredrickson was entitled to provide further evidence at an evidentiary hearing.

---

1  Which is to say "anus" was not yet criminalized, such that even a unanimous *factual* finding of "anus" would *not* establish guilt.
2  Which is to say that a jury *may or may not* have found guilt based on genitals or pubic area, because there was no special verdict.
3  For example claim 57, that counsel's confusion prevented striking two jurors; and claim 64 regarding whether jurors saw Fredrickson in jail clothes from 4 feet away for 10 minutes, but rather than *ask* them, this delay continues to destroy memory. Regarding the *ex post facto* claim, it is no-longer possible for counsel to explain why he did not check the status of the law.

**Reasonable people could debate how many days elapsed on the Speedy Trial Act clock because the district court did not count how many days had passed at all, neither at the trial level nor on collateral review**

The number of days continues to be a disputed fact and no court has calculated the days; Accordingly a reasonable person could debate the number. Reasonable people would understand that "In ruling on a defendant's motion to dismiss, the court *must* tally the unexcluded days". Zedner v US, 547 us 489 @507 (2006). See also Cody v Morris, 623 F.2d 101 @103 (CA9 1980) (remanded because days elapsed is disputed fact and not tallied).

**Reasonable people would debate if and where the finding that the public's interest was outweighed is located on the record**

Reasonable people could debate whether the trial court entered legally defective findings, because each entry and transcript lacked a specific finding that the *public's* interest in a speedy trial was outweighed. It is not enough that a continuance be in the "interest of justice", it must also outweigh the public's interest in a speedy trial. This second finding of fact is what Judge Darrow failed to make, and is a fatal defect. A reasonable person would take notice that the word "public" does not appear anywhere in the hearing or findings, and would thus doubt (or at least debate) whether a finding that the public's interest was outweighed was entered onto record.

**Reasonable people could debate, whether appellate counsel was ineffective for failing to reassert the STA claim on appeal instead of, or in addition to, the free speech claim**

Reasonable people could debate whether there is a "only one issue" policy on direct appeal, which would inform the later ineffectiveness inquiry into whether "there is a reasonable probability that the issue [counsel] failed to raise would have altered the outcome of the appeal, had it been raised". Brown v Finnan, 598 F.3d 416 @425 (CA7 2010).

**Whether Fredrickson has provided *prima facie* evidence that the judge did not author the denial, and an evidentiary hearing is required to determine if a clerk authored it.**

If it were revealed that in ruling on a motion, that a judge did not actually consider the merit, the same would be a denial of due process. It has come to light that MetaData suggests exactly this situation. See Exhibit A @1. The metadata from Judge Mihm's various electronically filed orders contain an "author" notation with names other than "Michael Mihm". This suggests that someone other than Judge Mihm wrote several of the opinions in

question  --including the denial of the habeas petition which appears to be the opinion of "Kerry Haas". Exhibit A. It is no secret that judges rely heavily on their law clerks, but there is a constitutional concern when the reliance goes too far or becomes ghost-writing for something more complex than mere administrative orders.

Reasonable people could debate who wrote the opinion bearing Judge Mihm's virtual signature, and as a result this court should order an evidentiary hearing to get to the bottom of it. For those familiar with ChatGPT and other AI, the appealed order resembles the output attainable by simply uploading Fredrickson's reply brief along with the command "write a denial based on procedural default". While Fredrickson does not suggest AI was used, the comparison between AI and a clerk instructed to draft a denial is striking. In both events, persuasive points that may make a reader question his first impression are overridden by the express command to draft a denial, and for this reason a judge's "approval of the text" should not be accorded any weight  --a judge should do his own heavy lifting. Another symptom of a directed outcome is that nuanced arguments either cannot be addressed at all or with the necessary specificity that only an open mind can provide.


**Reasonable jurists could debate whether the separation of powers doctrine precludes procedural default**

A reasonable person would understand that the nation must follow all laws presented by congress and approved by the president, including the court system when a law changes or adds judicial review. Such reasonable person would understand that the only exception is for conflicts with the constitution, and would find it debatable whether the court's doctrine of procedural default has a constitutional underpinning.

Because Title 28 §2255 specifically provides for both when and what claims may be brought, and especially because it now contains a specific prohibition on successive petitions with two very limited exceptions for "newly discovered evidence" or "a new rule of constitutional law", §2255(h)(1-2); A reasonable person would find it debatable whether a court was "interpreting"[4] an ambiguous phrase when importing procedural default as an additional prohibition, or whether reading in the additional limit of procedural default resembled a legislative adjustment in violation of the separation of powers doctrine. A COA should issue so that this question may be resolved after full briefing and inquiry into the origin and legitimate application of the doctrine elsewhere in law.

4   See also Advisory Committee Notes to Rule 1 of the Rules Governing Section 2255 Proceedings ("Although rule 1 indicates that these rules apply to a motion for a determination that the judgment was imposed "in violation of the ••• laws of the United States" the language of 28 U.S.C. §2255, it is not the intent of these rules to define or limit what is encompassed within that phrase").

**Reasonable people can *and are* debating whether legal sexual conduct can be reframed as child porn. To withhold a COA would necessarily be a finding that several Ivy League professors, the ACLU, and several Supreme Court Justices are not "reasonable people".**

No one questions *whether* "a state's interest in safeguarding the physical and psychological wellbeing of a minor is compelling", Ferber @757, but the *existence*[5] of that harm in the first place is very much debated when it comes to sexual activity that is legal in the absence of a camera. Whether framed as sexual abuse, general harm, harm to reputation/employment, physical injury, mental health, or a privacy violation --the debate exploded when married people on the far side of a significant generation gap discovered the internet generation's new invention of voluntary/consensual "sexting". Decades of new research and prosecutions for what is now understood as widespread and often normative fuels new debate. Excerpts of this debate were presented to the district court in an unsolicited request for a COA. See Dist. R. #234. This panel is additionally presented with a list of the authors for each excerpt, along with a short self-bio as proof that *reasonable* people are debating :

Then District Judge **David Hamilton**, USA v. Eric Rinehart, Lexis 19498, No. 06-cr-00129 (D.Ind Feb-02-2007)
    "Thus, the *only* stated Congressional purpose for raising the age limit to 18 is not served at all by the
    prosecution in this case, where the victims and their ages are known and readily provable to be 16 and 17"

*Harvard University* - "Sexting: Youth Practices and Legal Implications" (2010) @ pages 12-13, 22
available at   https://cyber.harvard.edu/publications/2010/Sexting_Youth_Practices_Legal_Implications
and https://ssrn.com/abstract=1661343

    L  **Dena T. Sacco:** From 2007-2012, Dena was an Assistant Director and Clinical Instructor at Harvard
        Law School's Berkman Center Cyberlaw Clinic, where she focused on child exploitation and youth
        online safety. She has been a Lecturer on Law at Harvard Law School for several years, co-teaching the
        seminar "Child Exploitation, Pornography & the Internet" as well as teaching in the Graduate and First
        Year Legal Research and Writing programs. From 1999-2005, Dena was an Assistant United States
        Attorney in Boston, where she had primary responsibility for child exploitation cases in Massachusetts.
    L  **Rebecca Argudin**, **James Maguire**, and **Kelly Tallon** worked on this document while enrolled in
        the Cyberlaw Clinic at Harvard Law School.

---

5  Gilmore v Robinson, 117 F.3d 368 @374 (CA8 1987) ("The state's interest in  protecting minors from themselves becomes less
    weighty as their" age increases);
    US v Kantor, 677 F.Supp 1121 @1429 ftn 42 (C.D.Cali 1987) ("Sufficiently 'adult' as to no longer be the legitimate subjects of
    protection of 'children' ••• in this court's view, the societal interest in protecting 16 and 17 year old 'children' begins to be
    strained"). **LETTS**, District Judge
    "An odd day arises when a young man who could legally have consensual sex with his 16-year-old girlfriend, will forever be
    labeled a sex offender for receiving provocative pictures of her that she sent him via text message" USA v Nash, 1 F.Supp.3d 1240
    (N.D.Ala 2014) (Chief Judge **Karon Owen Bowdre**)
    "A situation no different than the thousands of similar photos taken every day by 17-year-old college students engaged in intimate,
    consensual relationships. The Government admits the theory of prosecution here could be used to prosecute anyone snapping a
    photo showing consenting individuals engaged in intimacy" . USA v Laursen, 847 F.3d 1026 @1036, CA9 (2017) Judge **Hawkins**
    "A painter using a model who was just under 18, even if it was his wife, would fall afoul of the statute" US v Corp, 236 F.3d 235
    @331, CA6 (2001). **Krupansky, Wellford**, and **Boggs**, Sixth Circuit Judges; **Elena N. Broder-Feldman** (argued and briefed),
    **Julie M. Carpenter** (briefed), **Jenner Block**

*Carissa Byrne Hessick - The Limits of Child Pornography* (2014) Professor of Law, S.J. Quinney College of Law, University of Utah. JD, Yale Law School. BA, Columbia University https://ilj.law.indiana.edu/articles/10-Hessick.pdf

    L  **Carissa Byrne Hessick** Professor of Law, S.J. Quinney College of Law, University of Utah. JD, Yale Law School. BA, Columbia University. Research assistance from **Beth DiFelice**, **Kristin Martinez**, and **K. Clint Metheney**. Comments from **Laura Appleman, Shima Baradaran, Jennifer Chacon, Jack Chin, David DePianto, Melissa Hamilton, Andy Hessick, Elizabeth Jones, Ruth Jones, Sam Kamin, Jennifer Koh, Zak Kramer, Alex Kreit, Rhett Larson, Cynthia Lee, Cortney Lollar, Arnold Lowey, Audrey Rogers, Addie Rolnick, Carrie Sperling, Anne Traum, Eugene Volokh, Jim Weinstein, Sean Williams,** and **Sam Wiseman**

Dawn C. Nunziato - *Romeo and Juliet Online and in Trouble: Criminalizing Depictions of Teen Sexuality* (2012) (George Washington University Law School) https://scholarship.law.gwu.edu/faculty_publications

    L  **Dawn C. Nunziato** Professor of Law at the George Washington University Law School. Editorial assistance **Pat Balakrishnan**. Comments from **Jonathan Lowy**. Research assistants **Robert Arcamona**, Thomas Hayne, Bridget Rochester, Megan Zaidan, and Kenneth Rodriguez.

*The Huffington Post - Teen Sexting: The Medium is NOT the Message* (2017) https://www.huffpost.com/entry/teen-sexting-the-medium-i_b_8538346

    L  **Marsha Levick** Deputy Director and Chief Counsel Juvenile Law Center; Adjunct Faculty, University of Pennsylvania and Temple Law Schools, Juvenile Law Center. Co-author: **Nicole Pittman**, Director, Center on Youth Registration Reform at Impact Justice

*JoAnne Sweeny - Sexting and Freedom of Expression: A Comparative Approach* (University of Louisville, Louis D. Brandeis School of Law) (2014)   Available at   https://uknowledge.uky.edu/klj/vol102/iss1/6   Pages 105-106

    L  **JoAnne Sweeny** Assistant Professor of Law, University of Louisville, Louis D. Brandeis School of Law. PhD, Queen Mary, University of London. A previous version of this paper was presented at the Free Speech Discussion Forum at the University of Notre Dame's London Law Centre in June 2012.

*Kimberlianne Podlas - "The Legal Epidemiology Of The Teen Sexting Epidemic"* @46 available at https://tlp.law.pitt.edu/ojs/tlp/article/view/91/98 (Associate Professor of Media Law, University of North Carolina)

    L  **Kimberlianne Podlas** is Associate Professor of Media Law, University of North Carolina, Greensboro, Dept. of Media Studies; JD, cum laude, SUNY at Buffalo, School of Law; BA, magna cum laude, SUNY at Buffalo.

*People v. Hollins, 971 N.E.2d 504, 2012 IL 112754 (ILL. 2012)*

    L  Justice **BURKE** and Justice **FREEMAN** of the Illinois Supreme Court

*Ariana E. Calderaro - "Ignoring The First Amendment: Criminalizing Legally Consensual Sexual Photographs"* available at https://law.siu.edu/_common/documents/law-journal/articles-2014/spring-2014/11-calderaro-casenote-sw.pdf  (Southern Illinois University School of Law) (2014) Page 526, 535.

    L  **Ariana E. Calderaro** at the time was a third-year law student expecting her J.D. from Southern Illinois University School of Law in May 2014. She received support from her family and friends during the writing process and guidance from Professor Steven Macias

Mackenzie Smith – "You Can *Touch*, But You Can't *Look*: Examining The Inconsistencies In Our Age Of Consent And Child Pornography Laws"  (University of Southern California Gould School of Law) Page 11, 12 Available at https://southerncalifornialawreview.com/wp-content/uploads/2018/01/87_859.pdf

    L  **Mackenzie Smith** Class of 2014, University of Southern California Gould School of Law; B.A. Anthropology 2005, Pomona College.

*Lawrence G. Walters - How To Fix The Sexting Problem: An Analysis Of The Legal And Policy Considerations For Sexting Legislation* (2010) Pages 108, 109, 130. Available at http://scholarship.law.unc.edu/falr/vol9/iss1/5

∟ **Lawrence G. Walters**, Esq., heads up Walters Law Group, a law firm focusing on First Amendment and Internet law. Mr. Walters has practiced law for twenty-two years and has authored hundreds of legal publications, including several law review articles on First Amendment issues in cyberspace. He often represents clients involved in cutting-edge Internet law issues, and holds a patent for an online age verification system. Recently, Walters has taken up the cause of representing juveniles being prosecuted for sexting behavior, and has coordinated with lawmakers and experts in an effort to call attention to the need for legislative reform in this area. He is frequently asked to comment on issues relating to Free Speech and censorship in the print and broadcast media and often speaks at industry conferences. Lawrence Walters can be reached via his website, www.firstamendment.com

*Carmen Naso - Sext Appeals: Re-Assessing the Exclusion of Self-Created Images (American University Washington College of Law)* (2011) pages 14,15,16. https://digitalcommons.wcl.american.edu/clb/vol7/iss1/2/

∟ **Carmen Naso** has served as the Supervising Attorney for the Juvenile Justice Unit of the Cuyahoga County Prosecuting Attorney for the past seven years, where he trained a staff of young lawyers before transferring to prosecute adult felony cases. Additionally, he has been an Instructor of Trial Advocacy at Cleveland-Marshall and an adjunct Professor at John Carroll University where he taught Criminal Justice, Corrections, and Sociology of Law. Currently he teaches in the Criminal Law Clinic and is an Instructor at the Stephanie Tubbs Jones Legal Academy at Case Western Reserve. He has presented on issues of Juvenile Delinquency to the Ohio Judicial College, Ohio Department of Youth Services, and presented this article at the American Bar Association Convention in Washington D.C. on April, 2012

*Julia McLaughlin - Crime and Punishment: Teen Sexting in Context* (Penn State Law Review 2010) available at https://ideas.dickinsonlaw.psu.edu/dlra/vol115/iss1/5/

∟ **Julia H. McLaughlin** published her article in the Penn State Law Review Journal with the help of colleague **Rebekah Gleason Hope** and research assistant **Caitlin Whalen**. The final draft considered comments and suggestions from **Heidi Anderson**, **Scott DiVito**, **Don Jones**, **Sonya Hoener**, **Quince Hopkins**, **Darren Latham**, **Lynn McDowell** and **Rod Sullivan** with working drafts reviewed by **Frank Derby**, **Brian Foley**, **Jana McCreary** and **Christopher Roederer**

*American Civil Liberties Union of Virginia* https://www.acluva.org/en/press-releases/felony-sexting-charges-dropped-against-virginia-teen-who-received-photo

∟ **Kent Willis** Executive Director of Virginia ACLU

*American Civil Liberties Union of Washington* https://www.aclu.org/news/privacy-technology/teens-who-engage-sexting-should-not-be-prosecuted-sex-offenders

∟ **Amy Roe**, Senior Writer at ACLU of Washington, **Steven W. Fogg**, **Kelly H. Sheridan** Attorneys for ACLU

*Matthew H. Birkhold - Freud on the Court: Re-interpreting Sexting & Child Pornography Laws*   Page @908 (Princeton University; Columbia Law School) (2013)  https://ir.lawnet.fordham.edu/iplj/vol23/iss3/3/

∟ **Matthew H. Birkhold** Ph.D. candidate, German, Princeton University; J.D. candidate, Columbia Law School. With comments from **Amy Adler**, **Alexander Birkhold**, **Peter Brooks**, **Jordan Elkind**, **Michael Herz**, **Lawrence Rosen**, **Kim Lane Scheppele**, and **Martin Stone**

*Marsha Levick and Kristina Moon, Prosecuting Sexting as Child Pornography*, Valparaiso University Law School  44 Val. U. L. Rev. 1035 (2010)   Available at  https://scholar.valpo.edu/vulr/vol44/iss4/2

∟ **Marsha Levick** is the Deputy Director and Chief Counsel of Juvenile Law Center. **Kristina Moon** is a deferred associate from Dechert LLP, working at Juvenile Law Center from 2009–2010. This article was based on the arguments Juvenile Law Center raised in its amicus brief in Miller v. Skumanick, as well as a presentation on the issue for the Valparaiso Law Review Symposium

*Alvin J Primack - Youth sexting and the First Amendment: Rhetoric and child pornography doctrine in the age of translation* (University of Pittsburgh)   Available at   https://doi.org/10.1177/1461444817737297

    L  **Alvin J Primack** is a doctoral student in the department of communication at the University of Pittsburgh and received their M.A. in Communication Studies at California State University, Long Beach. Their research centers on the intersections of law, gender, culture, media, and rhetoric. Their work appears in Critical Studies in Media Communication and First Amendment Studies

Antonio M. Haynes - *The Age Of Consent: When Is Sexting No Longer "Speech Integral To Criminal Conduct"?* (2012)   Available at   https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1744648

    L  **Antonio M. Haynes**, B.A., magna cum laude, University of Rochester, 2007; Candidate for J.D., Cornell Law School, 2012; Articles Editor, Cornell Law Review, Volume 97. guidance, support, and feedback from Professors Chafetz, Underkuffler, and Professor Dorf. Editorial help from **Megan Easley**, **Margaret O'Leary**, and **Catherine Milne**

*Julia H McLaughlin - Crime and Punishment: Teen Sexting in Context* (Penn State Law Review) (2011) Available at   https://www.pennstatelawreview.org/115/1/115 Penn St. L. Rev. 135.pdf   on page 181

    L  **Julia Halloran McLaughlin** and **Rebekah Gleason Hope**, research assistant **Caitlin Whalen**. review and comment from **Frank Derby**, **Brian Foley**, **Jana McCreary** and **Christopher Roederer**.


    The federal statute §2251(a) uses the term "minor" not "child", accordingly reasonable people are debating *where* it moves beyond "child" porn. Another part of the debate is that no court has decided what the *Constitution* considers to be a child; The Constitution does not *defer* to any statute, however it may be *informed* by them, and as a result reasonable people are concluding that a person legally able to have sex[6] cannot be considered a child under the constitution. The court should allow this issue to proceed to full briefing so that "child" can be defined in whole, in part, or via a negative; and to reveal three ways that the statute may actually survive strict scrutiny.


    Reasonable people are also debating the issue from another angle. In Ferber the Supreme Court approved a New York law banning *commercial distribution* of models *under sixteen* which had also provided a *mistake of age defense*  --three distinguishing statutory aspects now absent from the current federal law. Those things aside, the Supreme Court granted certiorari to decide if the constitution required the New York law to require an *obscenity* finding, and answering "no", the law stood. At the center of that debate was an inquiry into harm, and reasonable people have concluded that harm's origin is an independently sexually abusive act. Reasonable people are debating *whether* and *when* older teens' private sexting is abusive. Abuse being synonymous with harm, the debate often compares *reactive waiting* for any harm to occur   with   *proactively assuming* that harm will occur.

---

6   Most people defer to their local age of consent, however the federal age is sixteen. See §2243(a); See also §2241(c) using term "child"

If the court authorizes consideration of this issue, the implications of harm's presence *and* absence will be briefed, including "minor's" rights to privacy which sits on *both* sides of the equation. These factors would be distilled into the constitutional concepts they represent, and traditional constitutional analysis will be applied. Briefing is also necessary because only *one* district court has considered the concept of normative sexting, and *no* court has considered the unique implications of COVID stay-at-home orders on legal relationships where only the images are criminalized. The national discourse is screaming for a rational answer as to whether the *constitution* only recognizes a simple child/adult dichotomy or a transitional teen/adolescence intermediate period. In 2020 over 8 million[7] citizens were required to express intimacy in person and could not legally weigh the risk/benefit of sexually explicit expression in their relationships or Hollywood[8] careers. Advances in mobile messaging have also fostered the growth in "sexting" and continue to create new circumstances beyond the outdated rationale of precedent's past. The court need not resolve exactly where childhood (and thus the *child* porn exemption) ends, it is enough to conclude that when and where a sixteen year old is legally permitted to have sex, that they are not a child and the law must survive strict scrutiny.

### Conclusion

The appellant has demonstrated that reasonable jurists could debate the resolution of these claims or that the issues deserve further review. Therefore, the appellant respectfully requests that this Court issue a Certificate of Appealability on any ground.

Respectfully submitted,

/s/Tim Fredrickson

---

7   In 2020 appx 4,187,874 were age 16, and  4,164,893 were 17 https://ojjdp.ojp.gov/statistical-briefing-book/population/faqs/qa01104
8   US v. Kantor, 677 F. Supp. 1421 @1430 (C.D.Cali. 1987) "Section 2251(a) is a blanket prohibition, it brooks no exceptions. A 17 year old performer cannot volunteer to do the proscribed act, nor may the parents consent even if they believe that the performance would be in the performer's best overall interest. Congress has made the determination that there are absolutely no circumstances in which even the best collective judgment of all directly affected persons may be acted upon. This blanket legislative intrusion into the right of individual choice in an area of First Amendment expression is not to be dismissed lightly"

# Appendix A

Description:

| Docket item | Administrative (A) Substantive (S) | Meta-Data Author | Signed by | |
|---|---|---|---|---|
| 107 | (A) Set Conference Call | ValeriaHaynes | Shig Yasunaga | |
| 162 | n/a | n/a | John Milhiser<br>Richard Kim | |
| 163 | (S) Property Forfeiture | DCowan | Judge Mihm | |
| 165 | n/a | Murray | Murray W. Bell | |
| 174 | n/a | Murray | Murray W. Bell | |
| 183 | (A) Written conditions of sentence | US Courts | Judge Mihm | |
| 197 | (A) Granting seal of documents | melissaschoenbein | Judge Mihm | |
| 208 | n/a | Sarah Schryer | Gregory K. Harris<br>Sarah Holst Schryer | |
| 227 | n/a | BGibbs | Gregory K. Harris<br>Sarah Holst Schryer | |
| 228 | n/a | BGibbs | Gregory K. Harris<br>Sarah Holst Schryer | |
| 230 | n/a | Gibbs, Brianna (USAILC) | Brianna Gibbs | |
| 244 | n/a | n/a | Gregory K. Harris<br>Jennifer Mathew | |
| 300 | (S) Opinion on merits of §2255 | Kerry Haas | Judge Mihm | |
| 301 | (A) Order denying same | U.S. District Courts | Shig Yasunaga<br>Judge Mihm | |





8. In acc... ...2(b)(3) of the

Federal Rules ... ...rmitted to

seize the specif... ...ant or a

third party, an... ...cate, or

dispose of prop... ...ty.

WHERE... ... enter a

Preliminary Or... ...States and

order the Unite... ...tody of the

forfeited prope...

**Document properties**

| File name: | #162 Gov't Prelim Forfiet.pdf |
| File size: | 180 KB |

| Title: | - |
| Author: | - |
| Subject: | - |
| Keywords: | - |
| Created: | 2/29/20, 6:39:33 PM |
| Modified: | 2/29/20, 6:39:33 PM |
| Application: | - |

| PDF producer: | iText® 5.5.9 ©2000-2015 iText Group NV (AGPL-version) |
| PDF version: | 1.4 |
| Page count: | 9 |
| Page size: | 8.50 × 11.00 in (portrait) |

| Fast web view: | No |

Close

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

By:   /s/ Richard Kim
      Richard Kim, IL Bar No. 6226879
      Assistant United States Attorney
      United States Attorney's Office
      318 South Sixth Street
      Springfield, IL 62701

notice or of receipt of actual notice, whichever is earlier. This notice shall state that the

petition shall b                                                          eged interest

in the property                                                   and shall set

forth the natu                                                       the forfeited

property and a                                                      relief sought.

Publication n                                                  y days on

www.forfeitur                                                  ustice.

D                                                         will enter a

Final Order of

ENTERED: Ma

Document properties

File name:      #163 Grant Prelim Forfiet.pdf
File size:      116 KB

Title:          Microsoft Word - Preliminary order-CP-FREDRICKSON....
Author:         DCowan
Subject:        -
Keywords:       -
Created:        3/2/20, 9:45:21 AM
Modified:       3/24/20, 5:48:37 PM
Application:    Appligent StampPDF Batch 6.5

PDF producer:   Adobe PDF Library 11.0; modified using iText® 5.5.9 ©...
PDF version:    1.6
Page count:     3
Page size:      8.50 × 11.00 in (portrait)

Fast web view:  No

Close

s/ Michael M. Mihm
_____
United States District Judge Michael M. Mihm

E-FILED
Thursday, 19 March, 2020  09:19:47 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

UNITED STAT

P

v.

TIMOTHY FRE

D

COMES

and in support o

1.    The sent

2.    This cou

different

3.    This cou



**Document properties**

| | |
|---|---|
| File name: | #165 Continue Sentence.pdf |
| File size: | 61.8 KB |
| Title: | C:\Shares\Shared\From Old D\Clientdocs\FEDR-FREDRI... |
| Author: | Murray |
| Subject: | - |
| Keywords: | - |
| Created: | 3/19/20, 6:16:28 AM |
| Modified: | 3/24/20, 5:50:40 PM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Acrobat Distiller 10.1.16 (Windows); modified using iTe... |
| PDF version: | 1.6 |
| Page count: | 2 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

ENCING

'. Bell, P.C.

) A.M.

sel to be in a

n sentencing.

gro, who has

indicted that the Government has no objection to this motion to continue.

WHEREFORE, This counsel prays this Court for an order continuing  sentencing to a

later date and for other relief as the Court deems appropriate

Respectfully Submitted

/s/ Murray W. Bell
Murray W. Bell, P.C.

1.   Sentencing is currently scheduled for the 4th day of June 2020 at 2:00 o'clock PM.

2.   Pursuant to the Third Amended General Order issued by Chief Judge Sara Darrow, no in

     court hearing may be held until the 15th day of June 2020.

3.   The defendant desires that the sentencing take place at the earliest possible time and does

     not want

4.   This Cou                                                                    nifer Mathew

     who has                                                                    earing being

     held by v

5.   Attached                                                                    encing

     Hearing                                                                    ing.

     WHERE                                                                    llowing the

     Sentencin                                                                    he Court

     deems ap

Document properties

| | |
|---|---|
| File name: | #174 Consent Video Sentence.pdf |
| File size: | 65.6 KB |
| Title: | C:\Shares\Shared\From Old D\Clientdocs\FEDR-FREDRI... |
| Author: | Murray |
| Subject: | - |
| Keywords: | - |
| Created: | 5/29/20, 8:27:43 AM |
| Modified: | 5/29/20, 4:13:38 PM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Acrobat Distiller 10.1.16 (Windows); modified using iTe... |
| PDF version: | 1.6 |
| Page count: | 2 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

Respectfully Submitted

/s/ Murray W. Bell
Murray W. Bell, P.C.

AO 245B (Rev. 09/17)    Judgment in a Criminal Case
Sheet 1

E-FILED
Friday, 05 June, 2020 02:38:31 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

### Central District of Illinois

UNITED STATES OF AMERICA )
)    **JUDGMENT IN A CRIMINAL CASE**
v. )
)
Timothy Brand )

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to c
   which was accepted by the c

☑ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated gu

**Title & Section**

18 U.S.C. § 2251(a) and § 2251(e)

**Count**

1

    The defendant is sentenc                                    ce is imposed pursuant to
the Sentencing Reform Act of 1

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/4/2020
Date of Imposition of Judgment

s/Michael M. Mihm

---

**Document properties**

| | |
|---|---|
| File name: | #183 Judgement.pdf |
| File size: | 190 KB |
| Title: | Judgment in a Criminal Case |
| Author: | US Courts |
| Subject: | - |
| Keywords: | - |
| Created: | 6/5/20, 11:32:59 AM |
| Modified: | 6/5/20, 2:30:16 PM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Acrobat Distiller 17.0 (Windows); modified using iText... |
| PDF version: | 1.6 |
| Page count: | 6 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

UNITED STATES OF AMERICA,  )
 )



Document properties

| | |
|---|---|
| File name: | #197 Seal Granted.pdf |
| File size: | 76.6 KB |
| Title: | 3509(d) order.pdf |
| Author: | melissaschoenbein |
| Subject: | - |
| Keywords: | - |
| Created: | 12/10/20, 11:41:50 AM |
| Modified: | 4/6/21, 3:59:12 PM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Acrobat Distiller 17.0 (Windows); modified using iText... |
| PDF version: | 1.6 |
| Page count: | 1 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

So ORDERED, entered this _____ day of December, 2020

s/ Michael M. Mihm
_____
Hon. Michael M. Mihm, District Judge
United States District Court

...USION

...stated above, the Government respectfully requests that this

...endant's motion for a sentence reduction because he has failed

...raordinary and compelling reasons for release and

...e would undermine the sentencing factors in 18 U....

Respectfully Submitted,

UNITED STATES OF AMERIC...

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:   /s/Sarah Holst Schryer
      Sarah Holst Schryer
      Assistant United States Attorn...
      Office of the United States Att...
      211 Fulton Street, Suite 400
      Peoria, Illinois 61602
      Tel: 309-671-7050
      Fax: 309-671-7259

### CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2022, I caused a copy of the foregoing to

be filed with the Clerk of the Court using the CM/ECF system, which will cause

...oing to be sent to all parties of record.

s/ Brianna Gibbs



Document properties

| | |
|---|---|
| File name: | #208 Gov't Response to 203.pdf |
| File size: | 193 KB |
| Title: | - |
| Author: | Schryer, Sarah (USAILC) |
| Subject: | - |
| Keywords: | - |
| Created: | 1/31/22, 7:41:55 AM |
| Modified: | 2/19/22, 4:14:44 PM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Adobe PDF Library 21.7.131; modified using iText® 7.1.... |
| PDF version: | 1.6 |
| Page count: | 18 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

574 (7th Cir. 2021). The Court properly considered mitigating factors and found

the 200-month sentence in this case "sufficient but not greater than necessary,"

and that asses

**V.    CON**

For the rea                                                                    s that this

Court deny th                                                                  cause he

has failed to p                                                                ease and

the defendant                                                                  U.S.C.

§ 3553(a). Alt                                                                 iss the

second motio

Document properties

| File name: | #227 Gov't Resp to 224.pdf |
| File size: | 258 KB |
| Title: | Microsoft Word - Govt Response to 2nd Motion for CR... |
| Author: | BGibbs |
| Subject: | - |
| Keywords: | - |
| Created: | 7/28/22, 12:58:08 PM |
| Modified: | 8/27/22, 5:24:54 AM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Acrobat Distiller 22.0 (Windows); modified using iText... |
| PDF version: | 1.6 |
| Page count: | 16 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:    /s/Sarah Holst Schryer
       Sarah Holst Schryer
       Assistant United States Attorney
       Office of the United States Attorney
       211 Fulton Street, Suite 400

## Document properties

| | |
|---|---|
| File name: | #228 Gov't motion to Seal.pdf |
| File size: | 83.1 KB |
| Title: | Microsoft Word - Government Motion to Seal.docx |
| Author: | BGibbs |
| Subject: | - |
| Keywords: | - |
| Created: | 7/28/22, 12:55:28 PM |
| Modified: | 8/27/22, 5:26:47 AM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Acrobat Distiller 22.0 (Windows); modified using iText... |
| PDF version: | 1.6 |
| Page count: | 3 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

4:17-cr-40032-MMM   # 228   Page 2 of 3

Respectfully Submitted,

UNITED STATES OF AMERICA

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:    /s/Sarah Holst Schryer

E-FILED
Monday, 01 August, 2022  09:21:39 AM
Clerk, U.S. District Court, ILCD

## CERTIFICATE OF SERVICE

I hereby cert                                        f the foregoing to

be filed with the Cl                                which will cause

notice and a copy                                   record. Further, I

caused a notice and                                 e of incarceration

as follows:

Timothy Fre
Register# 220
Seagoville FC
2113 North F
Seagoville, T



Document properties

| | |
|---|---|
| File name: | #230 Certificate.pdf |
| File size: | 77.2 KB |
| Title: | - |
| Author: | Gibbs, Brianna (USAILC) |
| Subject: | - |
| Keywords: | - |
| Created: | 8/1/22, 5:58:23 AM |
| Modified: | 8/21/22, 3:15:41 PM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Adobe PDF Library 22.1.174; modified using iText® 7.1.... |
| PDF version: | 1.6 |
| Page count: | 1 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

s/ Brianna Gibbs
Legal Assistant

## Document properties

| | |
|---|---|
| File name: | #244 Gov't Motion to Dismiss 239.pdf |
| File size: | 123 KB |

| | |
|---|---|
| Title: | - |
| Author: | - |
| Subject: | - |
| Keywords: | - |
| Created: | 11/16/22, 12:43:29 PM |
| Modified: | 11/16/22, 3:06:40 PM |
| Application: | Appligent StampPDF Batch 6.5 |

| | |
|---|---|
| PDF producer: | Adobe PDF Library 22.2.244; modified using iText® 7.1.... |
| PDF version: | 1.6 |
| Page count: | 12 |
| Page size: | 8.50 × 11.00 in (portrait) |

| | |
|---|---|
| Fast web view: | No |

Close

the event this Court finds to the contrary, the government requests additional

time to address the substance of Fredrickson's numerous claims.

Respectfully submitted,

UNITED STATES OF AMERICA

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:    /s/Jennifer Mathew
Jennifer Mathew
Assistant United States Attorney

a detailed and specific affidavit showing "the petitioner has actual proof of his allegations beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). It is

we

of

Document properties

| | |
|---|---|
| File name: | 300.pdf |
| File size: | 255 KB |

co

co

| | |
|---|---|
| Title: | - |
| Author: | Kerry Haas |
| Subject: | - |
| Keywords: | - |
| Created: | 11/18/24, 7:57:37 AM |
| Modified: | 11/23/24, 7:38:07 AM |
| Application: | Appligent StampPDF Batch 6.5 |

sh

to

pe

pr

*M*

iss

| | |
|---|---|
| PDF producer: | Adobe PDF Library 24.3.212; modified using iText® Cor... |
| PDF version: | 1.6 |
| Page count: | 13 |
| Page size: | 8.50 × 11.00 in (portrait) |

Fast web view:    No

Close

28

Clerk is **DIRECTED** to prepare a judgment and close this case.

Entered on November 18, 2024.

/s/ *Michael M. Mihm*
Michael M. Mihm
United States District Judge

E-FILED

Judgment in a Civil Case (02/11)

Tuesday, 19 November, 2024 04:06:02 PM

Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
### for the
### Central District of Illinois

**Timothy Brandon**

**Petit**

**United States of Ar**

**Resp**

Document properties

| | |
|---|---|
| File name: | 301.pdf |
| File size: | 168 KB |
| Title: | - |
| Author: | U.S. District Courts |
| Subject: | - |
| Keywords: | - |
| Created: | 11/19/24, 12:57:06 PM |
| Modified: | 11/23/24, 7:39:16 AM |
| Application: | Appligent StampPDF Batch 6.5 |
| PDF producer: | Adobe PDF Library 24.3.212; modified using iText® Cor... |
| PDF version: | 1.6 |
| Page count: | 1 |
| Page size: | 8.50 × 11.00 in (portrait) |
| Fast web view: | No |

Close

:17-cr-40032

-4154

☒ **DECISION** ... a decision has
been rendered.

**IT IS ORDER** ... e, Set Aside, or
Correct Sentence pu ... ES to issue a
certificate of appeal

**Dated: 11/18/2024**

_s/ Shig Yasunaga_
Shig Yasunaga
Clerk, U.S. District Court

# Appendix B

COA presented to the district court

# United States District Court
## Central District of Illinois

United States
Plaintiff - Respondant

vs

Timothy Fredrickson
Defendant - Movant

No.  17-cr-40032
No.  22-cv-04154

### <u>Motion for Certificate of Appealability</u>

Pursuant to 28 U.S.C. §2253(c), Fredrickson respectfully requests this Court to issue a Certificate of Appealability on the claims raised in the underlying motion pursuant to 28 U.S.C. § 2255, because reasonable jurists could debate whether this petition should have been resolved differently based on at least one of the several significant legal and constitutional issues raised.

### Standard

    "Determining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding". Slack v McDaniel, 529 us 473 @484-485 (2000).

    "The question is the debatability of the underlying constitutional claim, *not the resolution of that debate*" Miller-El v. Cockrell, 123 S. Ct. 1029 (2003) and "that jurists of reason would find it *debatable* whether the district court was correct in its procedural ruling" Slack @484.

### Proposed Questions to Certify on Appeal

Whether actual innocence was shown for the *ex post facto* violation, since exhibition of the *anus* was not criminalized until one year *after* Fredrickson's indictment, yet given to the jury for guilt determination.

Whether the separation of powers doctrine prevents the application of procedural default in §2255 petitions, where no court has offered a constitutionally-based reason to avoid applying a duly enacted law, here 28§2255.

Whether the judicial rules for habeas corpus' preference that a trial judge collaterally rule on whether a mistake has been made, creates the appearance of impartiality when a judge decides for himself if he made a mistake.

Whether the habeas court committed an abuse of discretion by not utilizing a magistrate judge in whole or in part.

Whether an allegation that claims or arguments have been overlooked should be decided by another via COA, to decide the threshold question of whether such has indeed been overlooked or inadequately answered.

Whether under rules of liberal construction for pro se filings, Fredrickson invoked ineffective assistance of counsel for at least 1 of the 11 claims addressed by the government but not the court; or, in light of virtually only one type of cognizable claim, whether as a matter of policy, all claims should be construed as whether counsel was ineffective regarding any named claim.

Whether it is debatable that Fredrickson invoked ineffective assistance of counsel by stating in the heading of "Claim 1. Counsel was ineffective for not bringing a Speedy Trial Act violation on Appeal" Petition #239, page 21

Whether it is debatable that Fredrickson invoked ineffective assistance of counsel for claim 32 by explaining how "Counsel did not adequately safeguard Fredrickson's Due Process rights" Dkt. #281 @9.

Whether it is debatable that the court should have waived procedural default for any claim(s) as a remedy for the government's role in the delay, or administrative delays.

Whether *recent public debate and findings* regarding any harm in the new concept of "sexting" deserves reevaluation of whether it continues to be true that harm is present in an overwhelming number of cases.

Whether *technological omnipresence* requires reevaluation of whether §2251 continues to be "suitably limited" to harmful scenarios, especially given government stay-at-home orders

Whether COVID *government stay-at-home orders* inspire enough harm-free situations (overbreadth) to warrant new inquiry into whether any overbreadth is substantial enough to warrant constitutional review.

Whether technological omnipresence *and* stay-at-home orders *combine* to create a prima facie showing of overbreadth deserving inquiry into whether §2251 now reaches a substantial enough portion of conduct lacking harm to warrant constitutional review.

### Introduction to Argument

Because the *debatability* of Constitutional issues is the standard, Fredrickson has located actual examples of a live debate to take the decision out of the court's hands in regards to whether a COA should grant. This has been done very forcefully for claims 2, 3, 25, and 33. The evidence of debatability shown comes in the form of law journals, dissenting judges, news articles, and at times public surveys which are *per se* what jurists of reason are debating. Emphasis is on *who* must find the issue debatable, the standard is by reasonable *jurist,* not a majority of judges by case law. A distinction echoed by the clarification that the standard is "**_not_** the resolution of that debate", a simple way of deferring to the public rather than whether courts appear to have settled a political viewpoint.

**Reasonable persons are actually debating the First Amendment protection of images like those forming the basis of Fredrickson's conviction, challenged in claims 2, 3, 25, and 33. The following actual examples from several prominent law schools, judges, and news sources demonstrate as much**

• *Harvard University - "Sexting: Youth Practices and Legal Implications"* (2010) @ pages 12-13, 22 available at   https://cyber.harvard.edu/publications/2010/Sexting_Youth_Practices_Legal_Implications and https://ssrn.com/abstract=1661343

> " It is, however, not clear that the reasons articulated by the Supreme Court for exempting child pornography from First Amendment protection apply to sexted images. Thus, using child pornography statutes to prosecute minors who appear in sexted images, or even to prosecute minors or adults who receive, possess or disseminate such images, may be contrary to the First Amendment •••. One could argue that sexted images, assuming they are voluntarily produced, are protected by the First Amendment because their production does not involve the sexual abuse of a child or the same type of harm as the production of conventional child pornography. "

• *Kimberlianne Podlas - "The Legal Epidemiology Of The Teen Sexting Epidemic"* @46 available at https://tlp.law.pitt.edu/ojs/tlp/article/view/91/98 (Associate Professor of Media Law, University of North Carolina)

> " Several scholars, however, assert that using the child pornography frame in the first place is not only analytically incorrect but also unconstitutional. They argue that self-produced pornography, even if by or of hot teens, does not qualify as "child pornography." "

•*Ariana E. Calderaro - "Ignoring The First Amendment: Criminalizing Legally Consensual Sexual Photographs"* available at https://law.siu.edu/_common/documents/law-journal/articles-2014/spring-2014/11-calderaro-casenote-sw.pdf  (Southern Illinois University School of Law) (2014) @page 526, 535. Discussing the-

> " "illogical inconsistency" between the child pornography laws' inclusion of seventeen year olds as victims and other statutes that allow sexual consent of seventeen year olds. This inconsistency created a potential 'legislative trap' for persons with legally consenting sex partners that were seventeen.
> •••
> Congress changed the definition of a minor in child pornography laws to apply to anyone under eighteen because the previous ceiling of sixteen hampered enforcement of child pornography laws. This was due to confusion about whether a subject was a minor because children enter puberty at different ages. The statute is not narrowly tailored to achieve a compelling government interest because the statute encompasses individuals who are legally able to consent to sexual relations and the convenient enforcement of child pornography statutes is not a compelling government interest "

• *Julia McLaughlin - Crime and Punishment: Teen Sexting in Context* (Penn State Law Review 2010) available at https://ideas.dickinsonlaw.psu.edu/dlra/vol115/iss1/5/

> " As demonstrated by the wave of teen prosecutions across the country, teen sexting conduct often falls within the definition of state child pornography law and exposes teens to criminal prosecution, imprisonment, fines and mandatory sexual offender registration. Given these harsh and unanticipated results when teens are prosecuted under child pornography laws, courts and legislatures are struggling to find an appropriate and measured legal response. Any such response should recognize the expanding zone of teen constitutional rights as they approach adulthood.
> When the teen images at issue are not obscene and have been voluntarily created with the permission of those pictured, and have not been published without consent, such conduct and content should be considered protected expression. Each state must struggle with the same question: Assuming teen sexting falls outside the category of child pornography, how should legislatures balance the rights of teens against society's interest in protecting children from the ills associated with child pornography? "

•Mackenzie Smith – "You Can *Touch*, But You Can't *Look*: Examining The Inconsistencies In Our Age Of Consent And Child Pornography Laws" (University of Southern California Gould School of Law) Page 11, 12 Available at https://southerncalifornialawreview.com/wp-content/uploads/2018/01/87_859.pdf

> **"** the Court clarified that Ferber did ***not*** create a *new* exception to First Amendment protected speech, but was instead adding child pornography to an ***already identified*** category—"speech ••• used as an integral part of conduct in violation of a valid criminal statute." In other words, child pornography is "intrinsically related" to the criminal conduct of child sexual abuse, which justifies its exemption from the First Amendment. Some scholars have interpreted this to mean that "child pornography laws cannot be constitutionally applied in circumstances where no actual minor is sexually abused during the production of the material."
>
> •••
>
> The dissent in People v. Hollins, consisting of two Illinois Supreme Court justices, put forth a First Amendment argument on behalf of the defendant. The justices contended that Stevens stands for the proposition that when there is no underlying child abuse in the production of the image, the resulting material does not constitute child pornography, and therefore is not exempt from First Amendment protection. As applied to Hollins's case, the dissent argued that, since "there was nothing unlawful about the production of the photographs . . . because the sexual conduct between the defendant and [his girlfriend] was entirely legal[,] [t]he photographs are therefore not child pornography as defined by the Supreme Court for purposes of the [F]irst [A]mendment." Consequently, the dissent concluded that the majority erred in using a rational basis review in its analysis. ••• If videotaping an adolescent is only abuse when the adolescent is incapable of consenting to sex, then once the adolescent reaches the age of consent, no abuse exists when he or she is photographed consensually. From here, the dissent's argument logically follows—consensually photographing an adolescent legally capable of consenting to sex is not abuse; therefore, the photographs are not an integral part of any underlying criminal conduct; therefore, such images are not exempt from First Amendment protection; therefore, strict scrutiny should be applied to any law prohibiting such images **"**

*American Civil Liberties Union of Virginia* https://www.acluva.org/en/press-releases/felony-sexting-charges-dropped-against-virginia-teen-who-received-photo

> **"** "Everyone agrees that the child pornography laws were not intended to apply to teens who take nude pictures of themselves," added Willis. "But no elected official wants to sponsor a bill that might be misinterpreted by the public as supporting sexting. What's left is a legislative impasse that places teens dangerously in the path of overzealous police and prosecutors." **"**

*Matthew H. Birkhold - Freud on the Court: Re-interpreting Sexting & Child Pornography Laws* Page @908 (Princeton University; Columbia Law School) (2013) https://ir.lawnet.fordham.edu/iplj/vol23/iss3/3/

> **"** Applied to sexting cases, child pornography laws are described as "a blunt instrument, which has created unintended consequences," and an "ill fit" for the act of sexting. These cases raise a number of critical questions concerning the constitutionality of prosecuting minors who produce and disseminate "self-produced sexually explicit images" and the best way to respond to children who engage in sexting, if these can even be considered child pornography cases. Most of the criticism about sexting cases, though, comes from doubts about the harm against which child pornography laws are trying to protect.••• While consensually-produced images may fall within the traditional notion of child pornography, no child sexual abuse is recorded in the production of the material, as required by relevant Supreme Court precedent carving out child pornography from the protection of the First Amendment. **"**

*American Civil Liberties Union of Washington* https://www.aclu.org/news/privacy-technology/teens-who-engage-sexting-should-not-be-prosecuted-sex-offenders

> ❝ To suggest that a juvenile who sends a sexually explicit selfie is a victim of his own act of child pornography is absurd, but that's exactly what a trial court in Spokane County has done. This much should be obvious: Selfies taken by minors are not child pornography. When he was 17, E.G. sent a text message with a photograph of his erect penis to a young adult woman he knew through his mother. The woman reported the incident to police, and the prosecutor chose to charge E.G. with the felony sex offense of dealing in depictions of a minor engaged in sexually explicit conduct — a law typically used to prosecute child pornographers.
>
> •••
>
> This much should be obvious: Selfies taken by minors are not child pornography. No crime is being committed when a teen photographs himself of his own volition. Nudity alone is not criminalized, even among minors.
>
> •••
>
> Criminal justice officials are beginning to recognize that child pornography laws are not meant to address teen sexting. The president of the National District Attorneys Association has publicly urged prosecutors to use their discretion to avoid criminal charges in many such cases. Courts are also finding that sexting should not be handled through child pornography prosecutions ❞

*Lawrence G. Walters - How To Fix The Sexting Problem: An Analysis Of The Legal And Policy Considerations For Sexting Legislation* (2010) Pages 108, 109, 130.  Available at http://scholarship.law.unc.edu/falr/vol9/iss1/5

> ❝ Age of consent laws complicate the sexting problem. Initially, these laws often fail to recognize that minors do, in fact, have constitutional rights, including privacy rights to engage in intimate relations.••• Moreover, these age of consent laws often set the threshold below the age of majority. Teens are understandably mystified when they are told that they can freely engage in sexual intercourse with an adult at, say, age sixteen, but that they cannot send a nude picture to their juvenile boyfriend under penalty of serious felony charges. A minor has the right to be nude in a private place, but the act of capturing either nudity or sexual activity on cell phone cameras triggers application of stringent child pornography penalties, including sex offender registration. Thus, the minor is punished for recording activity that is often legal and may be constitutionally protected. ❞

Harvard Law Review 2018 - *Washington Supreme Court Affirms Child Pornography Conviction of Teenager* https://harvardlawreview.org/print/vol-131/state-v-gray/    https://harvardlawreview.org/archives/vol-131-no-5/

> ❝ A more relevant question asks: in the context of this doctrine, what exactly is child pornography? In its statutory analysis, the *Gray* court had a definition of child pornography provided by a specific text. But to answer the question in the *constitutional* sense, there is no *textual* analog; one must examine the First Amendment challenges to child pornography laws considered by the Supreme Court.
>
> •••
>
> Any speech restriction justified by the existing child pornography exception must be limited to material that is the product of sexual abuse. According to *Free Speech Coalition*, child pornography is "intrinsically related" to the sexual abuse of minors in two ways. First, "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated." Second, the distribution of child pornography contributes to demand for its production. It is unclear that statutes criminalizing uncoerced, self-produced content sent via private message fit either rationale. ❞

*Carmen Naso - Sext Appeals: Re-Assessing the Exclusion of Self-Created Images* (American University Washington College of Law) (2011) pages 14,15,16. https://digitalcommons.wcl.american.edu/clb/vol7/iss1/2/

> The lack of consensus on the quantity, nature, and degree of harm created in the production or dissemination of depictions of lawful conduct should devalue its weight in the discussion. ••• There is hardly a consensus as to how creating and sending explicit self-created images correlates to children, or if it harms them at all. ••• The conventional child pornography laws cover a great deal of expression that is routine for today's youth and bears little resemblance contextually to the material in Ferber and Osborne. •••The lack of progress toward a unified legislative solution suggests judicial intervention is necessary to identify the class of cases that do not constitutionally qualify for prosecution as child pornography.

*Marsha Levick and Kristina Moon, Prosecuting Sexting as Child Pornography,* Valparaiso University Law School 44 Val. U. L. Rev. 1035 (2010)   Available at   https://scholar.valpo.edu/vulr/vol44/iss4/2

> Sexting usually entails the subject taking a photograph of herself or voluntarily asking a friend to take the photograph for her, and therefore lacks the exploitative element which drives the laws prohibiting child pornography. To charge sexting as child pornography, a prosecutor must blatantly disregard the obvious purpose and intent of the laws enacted to protect children from those who would exploit them. Legislatures and courts stress the harm that minors suffer when they are used in the creation of pornographic material, yet it is precisely this exploitative harm that is absent from the usual sexting scenario in which an adolescent voluntarily takes a photograph of herself (or asks another to do so) and shares the photograph with a boyfriend or girlfriend. The Supreme Court of the United States emphasized the harm to the "physiological, emotional, and mental health of the child[]" when categorically exempting child pornography from the First Amendment protection that adult pornography receives. The Court has stated the reason possession of child pornography is prohibited is to "protect the victims of child pornography [and] … to destroy [the] market for the exploitative use of children."
> •••
> The key element of exploitation is often absent in the practice of sexting. The youth voluntarily take and share photographic images of themselves with their peers—any prospective harm to youth would be indirect injury and dependent on "unquantified potential for subsequent criminal acts," and therefore squarely outside the Ferber exception to First Amendment protection.

*Alvin J Primack - Youth sexting and the First Amendment: Rhetoric and child pornography doctrine in the age of translation* (University of Pittsburgh)   Available at   https://doi.org/10.1177/1461444817737297

> Because the Supreme Court has not yet addressed sexting or youth-generated explicit images in terms of the First Amendment, legal professionals continue to face interpretational difficulties when dealing with cases pertaining to youth sexting. Since there is no guidance on evaluating issues of age, self-exploitation, and self-sexual abuse among adolescents within the context of child pornography law, judges may avoid considering First Amendment challenges altogether
> •••
> It is not the sexual depiction of youths in visual media that renders it unprotected speech, as child pornography laws are often interpreted as proclaiming, but the abuse of a child that occurs in its production and distribution that renders it so. This leads one to wonder: What are the assumptions made about youths' sexts by legal professionals that allow for child pornography laws' application to youth sexting to be construed as constitutional? What translational work is required to categorize youth sexts as child pornography, and are there other ways of thinking about youth sexts?
> •••
> fear drives interpretations of child pornography law that focus entirely on one aspect of a sext's content—a minor engaged in a sexual act—and sidesteps the contextual components of the child pornography jurisprudence around which legal harm is theorized. This cultural fear of youth sexuality rationalizes incommensurate punitive charges for consensual sexual acts among youths as if they were one and the same with rape and molestation

Antonio M. Haynes - *The Age Of Consent: When Is Sexting No Longer "Speech Integral To Criminal Conduct"?* (2012)   Available at   https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1744648

Page 372-373 The result in Ferber, the Court explained, was actually grounded in "a previously recognized, long established category of unprotected speech," namely "speech or writing used as an integral part of conduct in violation of a valid criminal statute." Scholars have noted that this description of Ferber is surprising and may well make Stevens one of the most doctrinally significant constitutional opinions of 2010. Stevens is a pathmarking decision that makes plain that there is not a "child pornography exception," to the First Amendment, but instead a "speech integral to criminal conduct exception" that sometimes encompasses child pornography.

Page 373-374 First, sexting is simply not child pornography as the Supreme Court has repeatedly defined the term. Second, even if sexting could be considered child pornography under some theory, after Stevens there is no longer a "child pornography exception" to the First Amendment, but instead a "speech integral to criminal conduct exception." After teens reach the age of consent, their sexual activity is not typically criminal conduct. Thus, the First Amendment must fully protect sexted images of completely legal sexual acts. ••• Older teens' maturity levels and their abilities to fully appreciate the consequences of their actions are undoubtedly sound bases for constitutional distinctions. The age of consent thus represents the solemn legislative judgment that minors are mature enough to appreciate the potential consequences of their sexual activity, including pregnancy, childbirth, abortion, and sexually transmitted disease. Accordingly, this Note expresses tremendous skepticism that sexting warrants independent legislative action beyond setting the age of consent.

Page 393 In discussing Ferber, the Court effectively "assimilated child pornography to the traditionally unprotected category of 'speech integral to criminal conduct.'" While some have described the Court's characterization of Ferber as novel, a close reading of the cases prior to Stevens shows that despite scholarly views to the contrary, the Court had never created a bright-line rule that all depictions of minors engaged in sexual acts were child pornography

Page 395 in determining whether a particular non-obscene image constitutes child pornography, the initial question must be whether there is specific illegal conduct to which the speech is integral. Because neither nudity, masturbation, nor even large amounts of teenage sex are illegal, statutory-rape laws are the most logical starting point for determining whether sexted images sent between older teens are protected speech.

Page 397-398 sexting between teens who have reached the age of consent is neither child pornography nor likely obscenity, any statutes that seek to address sexting without tying the activity to the age of consent would problematically draw content-based distinctions. Such content-based distinctions on speech are presumptively invalid and subject to strict scrutiny. To survive strict scrutiny, the content-based restriction must be narrowly tailored to promote a compelling governmental interest using the "least restrictive means." ••• tying sexting statutes to validly enacted statutory-rape or age-of-consent statutes would re-invert the First Amendment, restoring basic First Amendment principles. Traditionally, "free speech jurisprudence has held that liberties in the realm of expression must remain broader than liberties in the realm of action." For the most part, the Court's jurisprudence on sexual speech has reversed that rule. Indeed, permitting states to impose legal sanctions on older teens for sexting only serves to perpetuate the "suggest[ion] that there is something more dangerous about the representation of sex than the act of sex itself—a most perplexing premise indeed." Tying child-pornography statutes to age-of-consent statutes would therefore make the realm of allowable expression at least as broad as the realm of allowable action.

Page 403 Even before Stevens, sexual speech that was neither obscene nor the result of child abuse was likely constitutionally protected. In the wake of this decision, however, sexual speech involving minors that is not in violation of a valid criminal statute is definitely constitutionally protected.

*Carissa Byrne Hessick - The Limits of Child Pornography* (2014) Professor of Law, S.J. Quinney College of Law, University of Utah. JD, Yale Law School. BA, Columbia University https://ilj.law.indiana.edu/articles/10-Hessick.pdf

Page 1440 This Article addresses the expansive scope and enforcement of child pornography laws, not
❝ only in the limited context of sexting but also in a number of other factual scenarios where the pornographic image is not the product of child sex abuse or exploitation. It argues that, by enacting expansive child pornography prohibitions and prosecuting cases in which there is no abuse or exploitation, legislators and prosecutors have impermissibly expanded the category of child pornography beyond its constitutional limits ••• how the courts choose to define child pornography is also how the courts define the boundaries of the child pornography exception to the First Amendment. Because it is the status of the image—that is, whether an image is or is not child pornography—that determines constitutional protection, how to define the category of child pornography is of surpassing importance. Unfortunately, the Court has not placed clear limits on what constitutes child pornography, and legal scholars have largely failed to fill the gap.

Page 1453 The conflicting language from the Court's decisions and its failure to offer an explicit definition of the child pornography exception leave the limits of child pornography unclear. Thus, any attempt to define the child pornography category may not simply rely on the Court's cases but must provide independent support for a proffered definition. A definition that limits child pornography to images created through sexual exploitation or abuse is sensible because it limits child pornography according to the principal harm of such images.

Page 1455-56 defining child pornography as images created through the sexual exploitation or abuse of a child is of limited usefulness unless we also define sexual exploitation and sexual abuse. Unfortunately, there is no singular definition of those terms. Statutes, dictionaries, and academic literature define these terms differently. We cannot rely on legislative definitions because child pornography is a constitutional category, which makes it necessarily independent from legislative policy preferences.•••

Page 1475 Criminalizing pornographic images of adolescents who are above the age of consent but below the age of eighteen does not further the state interest in preventing exploitation and abuse. It only furthers the lesser and derivative interest in protecting those adolescents from the harms associated with circulation. Generally speaking, a law that infringes or coerces speech may be constitutional only if it satisfies strict scrutiny—that is, the law must be narrowly tailored to achieve a compelling government interest. Criminalizing pornographic images of adolescents who are above the age of consent arguably fails both prongs of the strict scrutiny requirement.

Page 1476 Although courts have repeatedly rejected challenges to child pornography convictions based on age of consent arguments, those decisions do not subject the laws as applied to the particular defendants to First Amendment analysis.

Page 1483 In creating a categorical exception to free speech, however, the Court has failed to provide a clear definition of child pornography. In the absence of constitutional limits, prosecutors and lower courts have expanded the category to include images that were created without any sexual abuse or exploitation of a child. This Article makes the case for limiting child pornography to those images that are the product of child sex exploitation or abuse. Not only is there support for such a definition in the Court's child pornography cases, but this definition most logically supports the differing treatment of child and adult pornography. Providing meaningful limits on child pornography is important not only because of the occasional prosecutorial abuse that makes headlines—such as teen sexting cases—but also because child pornography laws are being used as a proxy to punish child sex abuse❞

Dawn C. Nunziato - *Romeo and Juliet Online and in Trouble: Criminalizing Depictions of Teen Sexuality* (2012) (George Washington University Law School) https://scholarship.law.gwu.edu/faculty_publications

Page 11 However, an analysis of the Supreme Court's child pornography jurisprudence shows that **"** applying such laws to typical incidents of sexting is unconstitutional and inconsistent with the government's interests underlying such laws. ••• This Article reviews the contours of state and federal child pornography laws and examines the Supreme Court jurisprudence in this area, concluding that applying these laws to instances of sexting does not withstand constitutional scrutiny.

Page 16 Federal child pornography laws provide no exception for sexually explicit images voluntarily created and shared by older teenagers, despite the fact that under federal law the teenagers may legally consent to engage in sexual activity. Consequently, an individual can legally consent to engage in sexual activity, but face severe criminal punishment for depicting such activity. Protecting sexual activity while criminalizing the depiction and communication of depictions of that activity leads to an anomalous result and presents First Amendment problems.

Page 18-19 As applied to instances of sexting, the vast majority of state laws—like comparable federal laws—provide no exceptions for sexually explicit images that are voluntarily created and shared by teens, despite the fact that under these state laws, some teens are old enough to legally consent to engage in sexual activity. As under the federal law, this means that an individual can legally consent to engage in sexual activity, yet face severe criminal punishment for creating, possessing, or sharing an image of herself engaged in such activity. Once again, this presents serious First Amendment problems.

Page32  A review of the Supreme Court's child pornography jurisprudence makes clear that sexting prosecutions like those described in Part II above cannot withstand constitutional scrutiny. First, typical acts of sexting do not depict sexual abuse or exploitation of children—the gravamen of legitimate child pornography claims. The state's interest in prosecuting acts of sexting is not the same as the interest recognized by the Supreme Court of drying up the market for content that constitutes a "proximate link to the crime" of sexual exploitation or abuse of children.**"**

*The Huffington Post - Teen Sexting: The Medium is NOT the Message* (2017)
https://www.huffpost.com/entry/teen-sexting-the-medium-i_b_8538346
**"** The method of exploration should not dictate whether something is a crime. In these situations, the consequences of *criminalizing* sexting are far more traumatic and damaging to children than the consensual sharing of the photos themselves. Teens who thought they were sharing a private moment with their boyfriend or girlfriend are now having their lives destroyed by the very systems meant to protect them. The notion that prosecutors, police, probation officers or school administrators are pouring over images of youth on the cell phones confiscated in schools is a striking invasion of privacy that inflicts harm, not protection.**"**

*JoAnne Sweeny - Sexting and Freedom of Expression: A Comparative Approach* (University of Louisville, Louis D. Brandeis School of Law) (2014)   Available at   https://uknowledge.uky.edu/klj/vol102/iss1/6   Pages 105-106
**"** As objections to the use of child pornography laws in sexting cases have increased, states have tried a variety of legislative responses to the sexting trend, most of which still criminalize sexting. Although these sexting laws carry lesser penalties than child pornography laws, they may still be unconstitutional restrictions on freedom of expression.•••
Despite the press coverage of teenage sexting cases, *no American court has addressed whether sexting is protected* by freedom of expression under the First Amendment**"**

*JH McLaughlin - Crime and Punishment: Teen Sexting in Context Julia* (Penn State Law Review) (2011)
Available at   https://www.pennstatelawreview.org/115/1/115 Penn St. L. Rev. 135.pdf    on page 181

> "While child pornography laws serve a compelling purpose by protecting children from sexual predation and the lasting harm of digital abuse, child pornography and sexual offender registration laws are not intended to encompass teen sexting and should be amended to correct this overbreadth. Teens, as persons, are within the protection of the Constitution and enjoy some degree of sexual privacy and autonomy already recognized in the abortion, birth control access and right to medical treatment cases previously decided by the Supreme Court. Supreme Court precedent creates a zone of privacy enjoyed by older teens. Arguably, it embraces older teens' rights to create and possess sexually explicit photos, so long as the images are consensually created and privately shared and so long as they are not obscene."

It is thus demonstrated that the issue is debatable  --by *actual debate* among reasonable and intelligent citizens.

Noone defends child pornography. There is no pro-child-porn position any more than there is a public pro-slavery

position for labor. The only issue is defining this category in a way that nothing anyone wants to defend is covered.

Whether the issue is framed as adult vs child, harm vs harmless, or right to privacy vs forfeiture; There is fierce

debate on whether criminalizing images of consensual sexting by teens over the age of consent is constitutional.

If the court adopts a middle ground and finds that teens are *neither* adult *nor* child, yet have elements of both,

the core of the debate is still the question of harm  --which courts must constitutionally conceptualize, while the

states continue their attempt break the multi-layered issue of sexting down and categorize harmful components.

The existence of debate is further emphasized by the wide legislative disagreement in the states[9] and abroad

within both sexting and child porn laws. The court cannot deny the existence of this debate, accordingly a COA

must issue as to claims 2, 3, 25, and 33.


**Reasonable people could disagree on whether it is appropriate for a judge to rule on a claim that he erred**

Reasonable citizens could debate whether it creates the *appearance* of bias when a judge decides for himself

if he made a mistake. A reasonable person could conclude that when a judge does not correct his own mistake

(such as by a motion to reconsider), that his answer is not likely to change when asked a third time. In other

words, there is the appearance of bias when a judge is tasked with what amounts to an appeal of his own ruling.

Reasonable citizens could debate if internal procedure[10] conflicts with the recusal statutes *as applied*.

---

9   See *Sexting Legislation in the United States and Abroad: A Call for Uniformity* (2017) (Indiana University-Purdue University) (Collecting sexting, child porn, and revenge porn laws) https://zenodo.org/records/1037397
    See also Dawn C. Nunziato - Romeo and Juliet Online and in Trouble: Criminalizing Depictions of Teen Sexuality (2012) (same)
    See also https://cyberbullying.org/sexting-laws (2022) (collecting same)
10  The *"RULES Governing Section 2255 Proceedings"* are proposed by the Judicial Conference of the United States and approved by

**Reasonable people could find an abuse of discretion in choosing not to utilize a magistrate judge upon request**

The wide and virtually unbounded discretion in deciding to appoint a magistrate judge is not to be decided on a whim. Fredrickson's request was specific and reasoned, whereas the district court did not give any indication why[11] it declined to utilize a magistrate judge at least in part. It recognized that "a district judge *may* refer part of a case to a magistrate judge" but stated that "the rules Defendant cites do not give him the authority to *demand* referral to a magistrate judge". T/E  12/15/2022 (emphasis added). Entirely absent was *any reason why* it did not exercise its discretion. A reasonable person could debate that the decision was based on a whim and nothing more, which is an abuse of discretion, and find that a failure to give any reason, even a weak one, is an abuse of discretion.

**Reasonable jurists could debate whether the separation of powers doctrine precludes procedural default**

A reasonable person would understand that the nation must follow all laws passed by congress and approved by the president, including the court system when a law changes or adds judicial review. Such reasonable person would understand that the only exception is for conflicts with the constitution, and would find it debatable whether the court's doctrine of procedural default has a constitutional underpinning.

Because Title 28 §2255 specifically provides for both when and what claims may be brought, and especially because it now contains a specific prohibition on successive petitions with two very limited exceptions for "newly discovered evidence" or "a new rule of constitutional law", §2255(h)(1-2); A reasonable person would find it debatable whether a court was "interpreting" an ambiguous phrase when importing procedural default as an additional prohibition or whether reading in the additional limit of procedural default resembled a legislative adjustment in violation of the separation of powers doctrine.

**Reasonable people could debate whether the government's portion of delay was unreasonable, and what the appropriate sanction should be**

Two wrongs don't make a right, and while Fredrickson's delays are immediately punished *by the delay itself*, the *government's* delays harm only Fredrickson. A reasonable person would debate whether it was appropriate to *only* address Fredrickson's delay, as well as the type and extent of a remedy for the government's role in delay.

---

the United States Supreme Court, as required under the Rules Enabling Act.

11 In regards to a magistrate, the court only stated that "Moreover, a district judge may refer part of a case to a magistrate judge, but the rules Defendant cites do not give him the authority to demand referral to a magistrate judge" T/E  12/15/2022

**A reasonable citizen could conclude that since the prosecutor addressed 16 claims as IAC, that at least 16 claims sufficiently alleged IAC.**

A reasonable citizen would debate, and indeed the prosecutor *did* conclude that 16 claims arguably invoked IAC, however the court only addressed 5. Accordingly, a COA should issue as to whether cause was shown for at least the additional 11 claims addressed by the government.

**Reasonable citizens, informed of the heavy restrictions on what claims may be collaterally raised, would debate whether it is appropriate to construe all claims as IAC to prevent frustration of the writ.**

A reasonable citizen would wonder why the literal words of §2255 are facially broad, yet heavily restricted by the courts contrary to those words, and debate whether facts raised on their own with no allegation as to whether counsel was told to file or omit a claim, if all claims should be construed as whether counsel had a strategic reason for failing to file a motion based on the facts underlying the claim.

**Reasonable people could debate whether Fredrickson was entitled to a jury of his Iowa peers**

The sixth amendment states that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury *of the State and district wherein the crime shall have been committed"*. Reasonable people could debate whether an offense with some elements committed only Illinois and other elements committed only in Iowa, would require *jurors* from both.

A reasonable person would consider the feasibility of accommodating this right, and observe that the trial occurred in Iowa with only Illinois jurors, and also give weight to General Order No. 18-05, in regards to the Rock Island courthouse's temporary closure, wherein the Honorable Chief Judge Shadid stated that "In any criminal trial in which a special session is conducted outside the District, the Court may summon *jurors* from any part of the District in which the crime has been committed **and, if the defendant so consents,** from the District in which the Court is conducting business under this order". id.

The argument has never been about *where* a trial would occur, rather the demand was very clear with counsel that he wanted jurors from *both*, because the alleged crime occurred in both. Fredrickson stated as much in emails and written correspondence to counsel. A reasonable person could debate whether the right exists and that counsel demonstrated ineffectiveness by failing to make good on Fredrickson's demanded right to a jury of *all* his peers.

**Conclusion**

It is debatable whether procedural default should apply and alternatively whether cause was shown, and the underlying constitutional issues are themselves subject to debate.

Wherefore, Fredrickson respectfully requests that this court issue a COA because several issues are debatable, and an appellate court should engage that debate.

Respectfully submitted,

/s/ Tim Fredrickson