United States District Court
Central District of Illinois

United States
v
Tim Fredrickson

No. 17-cr-40032

FILED
SEP 16 2025
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## Defendant's Reply in Support of Motion for First Step Act Sentence Modification

### I. Introduction

Now comes the defendant, Fredrickson, in reply to the government's response [#321]. The purpose of this filing is to address and rebut the arguments set forth in the Government's Response, which erroneously contends that Fredrickson is ineligible for relief and that his release would pose a danger to the community. The motion is not a request for a new sentencing hearing to re-litigate issues already decided. Rather, it is a response to an extraordinary and unforeseen confluence of medical circumstances and public health risks that have fundamentally altered the conditions of Fredrickson's incarceration since the Court imposed its original sentence.

The Government's response is founded on a flawed, selective, and misleading interpretation of the facts and an incomplete understanding of both the relevant medical science and the unique epidemiological realities of a correctional facility. As demonstrated below, Fredrickson has met his burden under the law, establishing extraordinary and compelling reasons for a sentence reduction, and government does not conduct any actual analysis of any "applicable" §3553(a) factors, because there are none that have changed since the time of sentencing to become "applicable" with new force[1] and the government cannot force them to become applicable.

### II. The Defendant Has Met His Burden of Establishing Extraordinary and Compelling Reasons Under USSG § 1B1.13(b)(1)(D)

The Government's central argument rests on the claim that Fredrickson has failed to establish three elements of the policy statement regarding infectious diseases. This claim is based on a narrow, almost clerical, reading of the policy that ignores its clear intent. A proper and medically informed analysis of the circumstances shows that Fredrickson has met his burden on all three counts.

---

1 The statute clearly contemplates this situation. See §3582(c)(1)(A)(i) "after considering the factors set forth in section 3553(a) **to the extent that they are applicable,** if it finds that [] extraordinary and compelling reasons warrant such a reduction".

## A. The Facility Is Affected by an Ongoing Outbreak and/or at Imminent Risk of Being Affected by an Ongoing Outbreak of Infectious Disease.

The Government's position is that FCI Seagoville is not an "affected" facility because Fredrickson's tuberculosis (TB) diagnosis was for a "latent" infection, and the measles outbreak in Texas is "over". This argument is incorrect on both counts.

First, the Government concedes that Fredrickson was diagnosed with *latent* TB in March 2025. This is not a trivial or irrelevant fact. The policy statement, USSG § 1B1.13(b)(1)(D), requires a showing that the "correctional facility [is] affected... by (I) an ongoing outbreak of infectious disease". id. The presence of a new TB infection within the facility itself, regardless of whether it is active or latent, is irrefutable evidence that the facility is "affected". The source of this infection is also self-evident, as Fredrickson has been removed from the community for years, having clearly contracted the disease from "the only place he has been in the last several years --the BOP". Dkt #319 @2. The Government's focus on the distinction between active and latent TB is a red herring; the policy statement requires only that the facility be "affected", which a new infection plainly demonstrates. That the infection was diagnosed as latent rather than active is a matter of chance and timing, not a testament to the BOP's effective mitigation. Moreover, it must have been active before later becoming latent. Furthermore, the government places trust in one mere nurse's assessment that it was in fact latent, while also overlooking the suspicion of loyalty to their employer. The interest of justice is in accuracy, and an outside opinion by specialists that lack the threat of bias is appropriate.

Second, the Government's reliance on a single news report from August 2025 to declare the measles outbreak "over" is a classic temporal fallacy. Dkt #321 @ 14. Fredrickson's motion for release was submitted in June 2025[2], when the outbreak was at its peak. At that time, a CDC notice confirmed a rapidly expanding outbreak in Texas and other jurisdictions, with 222 cases reported across 12 U.S. jurisdictions, and over 93% of all cases being outbreak-associated. Fredrickson's claim that the facility was at "imminent risk" was not only reasonable but factually accurate at the time his motion was filed.

---

[...] response in an attempt to out-wait the current wave --a common tactic under COVID-19. This led to the motion being pressed in August 2025. Dkt 320

- 2 -

The legal analysis of "imminent risk" in a correctional setting cannot be equated with the risk to the general public. Measles is a disease with the "highest reproduction rate in the world", transmitted via airborne particles that can linger for up to two hours after an infected person leaves a room. Dkt #319 @3. In a prison, where "social distancing" is undeniably more difficult or impossible to accomplish, the risk of a new outbreak is perpetually "imminent". Therefore, a state or local declaration that an outbreak is "over" for the general population does not extinguish the unique and ever-present risk to a confined, high-density prison population. A nuanced understanding of the policy statement, one that accounts for the specific challenges of incarceral epidemiology, reveals that Fredrickson's concerns were, *and remain*, valid.

## B. The Defendant Is at Increased Risk of Suffering Severe Medical Complications or Death.

The Government's assertion that Fredrickson's medical history poses no heightened risk is a gross oversimplification that ignores well-established medical science. The government claims that Fredrickson's lungs are "clear" and that there is no evidence he is at "increased risk". Dkt #321 @14-15. This position is medically unsound and dismisses the synergistic effect of his prior infections and the known long-term consequences of respiratory diseases. It is also a medical opinion which it is not qualified to provide.

First, medical research confirms a causal link between COVID-19 infection and the *reactivation* of latent TB[3]. COVID-19 has not been eliminated, and as a respiratory illness, can cause an "immuno-suppressive state" and deplete the white blood-cells that are critical for walling off latent TB bacteria that are fighting to become an "active" infection. The TB bacterium is an "opportunistic pathogen" that remains latent, "waiting for people's immune system to become compromised" before it can activate[3]. Therefore, whether a future Covid or measles infection, this medical vulnerability makes a "latent" TB diagnosis a far more serious threat than the Government admits. It is a known medical reality that immunosuppression from an acute viral infection can trigger a dormant bacterial infection, and vice versa.

---

3   https://redetb.org.br/covid-19-could-activate-latent-tuberculosis/
    https://www.researchgate.net/publication/359432288_Reactivation_of_Tuberculosis_in_the_Setting_of_COVID-19_Infection

Second, the claim that Fredrickson's lungs are "clear" is contradicted by extensive medical literature. Post-acute COVID-19 syndrome, commonly known as "long COVID," includes respiratory complications and lung sequelae, such as pulmonary fibrosis[4]. The incidence of post-COVID pulmonary fibrosis has been reported to range from 20% to 70% in survivors[3]. This chronic damage, which may not be readily apparent from a standard medical examination, particularly one tasked with looking for active TB instead, significantly increases the risk of "severe medical complications or death" from subsequent respiratory illnesses. Dkt #319 @4-5.

The trifecta of a past COVID-19 infection, a current latent TB infection, and the threat of an extremely contagious airborne virus like Measles creates a unique and compelling medical justification for a reduction in sentence[5]. A prior illness does not vanish without a trace; it can leave behind long-term vulnerabilities that compound the risk from new diseases. Fredrickson emphasized this, and the government's narrow focus on the immediate symptoms entirely ignores this compounding risk. The court should take that as a concession.

The following table summarizes the compounding health risks that collectively constitute a profound and extraordinary threat to Fredrickson's well-being:

| Health Factor | Government's Claim | Rebuttal and Analysis |
|---|---|---|
| **Latent Tuberculosis** | "Non-contagious" and "not indicative" of an outbreak. | A new infection contracted in custody proves the facility is "affected." The latent state is a ticking time bomb, susceptible to reactivation from other illnesses. |
| **Lung damage** | Lungs are "clear", posing no increased risk. | A medically documented link exists between COVID-19 and T-cell depletion, which increases the risk of latent TB reactivation. Long-term lung damage from either disease is a common complication that the nurse did not look for. |
| **Measles Outbreak** | The outbreak is "over". | The outbreak was active and expanding at the time of the filing. The virus's high transmissibility makes the risk perpetual in a confined setting. |
| **Combined Risk** | No evidence of "increased risk of severe medical complications or death". | The synergistic effect of a weakened immune system and lung damage from TB and COVID-19 create a unique and profound risk from both TB reactivation and Measles. This is a confluence of risk factors that was not present at sentencing. |

---

4   https://e-trd.org/journal/view.php?doi=10.4046/trd.2022.0053
5   The statute also authorizes substituting the remainder of the sentence with supervised release, with new conditions.

-4-

## C. The Risk Cannot Be Adequately Mitigated in a Timely Manner.

The Government's final argument, that the risks can be adequately mitigated by BOP's standard protocols, is undermined by the very facts of this case. The existence of Fredrickson's latent TB infection is itself direct evidence of the BOP's failure to "adequately mitigate" the spread of infectious disease, nor is it an isolated incidence[6]. Despite having an annual screening protocol for TB, the system failed to prevent Fredrickson from contracting the disease. Fredrickson's motion points out this deficiency and notes that the BOP was on notice of similar failures from a 2018 TB outbreak at FCI Yazoo, a neighboring facility. Dkt #319 @6. The BOP's own internal documents admit that core public health measures like "social distancing" are "more difficult to accomplish in a correctional setting"[7]. In such an environment, the risk of a highly contagious, airborne disease like Tuberculosis and Measles spreading rapidly cannot be "adequately mitigated".

The Government's suggestion that Fredrickson can simply get a measles vaccine to mitigate the risk misses the point entirely. The statute is for circumstances where the risk is so great that it cannot be "adequately" mitigated *within the carceral environment*. The need to pursue medical treatment or vaccination is not the issue; the issue is that the facility itself is not, and cannot be, a safe environment for an individual with Fredrickson's compounding vulnerabilities.

## III. The Applicable 18 U.S.C. § 3553(a) Factors Support a Reduction in Sentence

The Government argues that the original sentencing factors and the defendant's subsequent conduct weigh against release. This is a misapplication of the law and a mischaracterization of the defendant's actions.

## A. The Seriousness of the Offense and the Need for Just Punishment.

In 2020, the Court found that an original sentence of 200 months was a just and appropriate punishment *at the time it was imposed*. The Court specifically stated that the sentence was "sufficient but not greater than necessary". However, a sentence is a final judgment only until new, extraordinary, and compelling reasons

---

6 Graves v Nash, no. 20-cv-00727 (S.D.Miss June 7, 2022)    Copeland v Chambers, No. 20-cv-00585 (S.D.Miss Jan 20, 2022)
7 https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf    at page 6 and/or 9

warrant a modification. The new medical risks --the dual threat of TB and measles in a COVID-weakened system-- were not, and could not have been, considered at the time of sentencing. Granting this motion is not an affront to the original judgment but an application of the very mechanism Congress created to address such unforeseen and life-threatening circumstances. The core purpose of the First Step Act is to allow courts to re-evaluate sentences based on new realities that a judge, at the time of sentencing, could not have anticipated[8].

## B. The Defendant Does Not Pose a Danger to the Community

The Government's most misleading claim is that Fredrickson's "persistent pattern of filing repetitive, frivolous[9] motions" demonstrates a danger to the community. Dkt #321 @7. This is a mischaracterization of Fredrickson's legal conduct and an unfair attack on a *pro se* litigant's rights.

While a warning from the Seventh Circuit is serious, the legal definition of "frivolous" litigation often applies to *pro se* litigants due to their "limited knowledge of the law and procedure". Fredrickson's actions, which perhaps some would say are legally unsophisticated, demonstrate a deep and persistent belief in the legal system. Fredrickson has pursued *every* legal avenue available to him to contest his conviction and sentence. This is not the behavior of a dangerous individual but rather of a citizen attempting, however clumsily, to exercise his rights. This is a far cry from a "danger to the community", and the government's attempt to equate the two is both unfounded and could be seen as retaliation for exercising the constitutional right of access to the courts. Such an attack on average citizens also provides a basis for distrust in government and its process. Furthermore, his *alleged* disciplinary infractions --possessing drugs or alcohol, destroying property, and possessing unauthorized tools-- if true, are not indicative of a propensity for the type of digital, non-physical, sexual crime for which he was convicted. Moreover, while ignorance of the law is not a defense *to prosecution*, it is highly relevant to any purported *future* danger to the community. The court should discount that ignorance of the law set a trap that knowledge now prevents the violation of[10]. Citizens are presumed to follow the law.

---

8 USSG 1B1.13(c) "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment"
9 It is highly relevant that the term "frivolous" also encompasses foreclosed arguments and premature filings.
10 See generally, the "Lambert Due Process Exception"; Dkt #299 @ 77-79

It is also highly relevant that at least *two* neutral third-partys have already given a personal assessment; Dr Witherspoon's report on danger, located on the record at Dkt #24 found there to be an exceptionally low risk. Similarly, the Department of Justice's own P.A.T.T.E.R.N. tool also assesses Fredrickson as a "low" risk.

Finally, if this court were to identify and establish a concrete danger, this court is statutorily authorized to "impose a term of probation or supervised release with or without *conditions* that does not exceed the unserved portion of the original term of imprisonment" 18 USC §3582(c)(1)(A). The court can tailor these conditions as the interests of justice require.

The most difficult and emotional aspect of this case is the victim's deeply felt pain, as expressed in her victim impact statement. The Government's use of her statement is an emotionally powerful plea to the Court. Her pain is valid, and her desire for the legal process to end is understandable. On this point, Fredrickson has neither made, nor attempted, any kind of contact --but the government has. Rather than let her heal in peace, the government desires a victim with fresh wounds to weaponize and use to its desired ends. She is not a pawn, she is a human being with emotions. The government's contact is disingenuous, it is not to help. The victim in this case has expressed a strong desire to move on, and the government should let her. It is not Fredrickson who has failed to leave her alone, it is the government. The court should strongly caution the government against further contact.

Fredrickson urges this court to balance the victim's right to peace with the defendant's right to pursue all legal remedies available to him under the law. A defendant's motion, while procedurally burdensome, is not a new act of harassment in the criminal sense. The pain the victim feels is a result of the legal process itself, not a new danger posed by the defendant. Denying a meritorious motion simply to provide emotional closure to the victim would be a perversion of the legal process and an abuse of judicial discretion. The Court must apply the law as it is written, weighing the defendant's new, life-threatening circumstances against the valid but distinct considerations of victim impact that §3582, perhaps by an intentional Congressional choice, does not account for.

## IV. Conclusion

Fredrickson has met his burden under the law. His diagnosis with latent tuberculosis proves that the correctional facility is "affected" by an ongoing infectious disease outbreak. His prior COVID-19 infection, combined with the extreme transmissibility of measles, places him at a unique and extraordinary risk of severe medical complications or death. The BOP's demonstrated inability to mitigate this risk in a timely and adequate manner, even with its own guidelines, renders continued incarceration a life-threatening reality.

The court found that the original sentence was just, but the circumstances of his incarceration have fundamentally and irrevocably changed. Granting this motion is not an act of leniency but a necessary and legally authorized response to a new and compelling risk. For the reasons stated above, Fredrickson respectfully requests that this Honorable Court grant his motion for a sentence reduction or a substitution with supervised release accompanied by any set of conditions that are necessary in the interest of justice.

Respectfully submitted,

/s/ Tim Fredrickson

/S/ TimFm/



Court Clerk
Federal Courthouse
100 NE Monroe St.
Peoria, IL 61602

Wendy Fredrickson
811 SE 2nd St
Galva, IL 61434